No. 04-6054
File Name: 05a0663n.06
Filed: August 4, 2005

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


UNITED STATES OF AMERICA,      )
        Plaintiff-Appellee,    )
                               )
v.                             )      ON APPEAL FROM THE
                               )      UNITED STATES DISTRICT
JACK STRASSWEG, RICH KROHN AND )      COURT FOR THE WESTERN
CLIFFORD ROMAIN                )      DISTRICT OF KENTUCKY
        Defendants-Appellants. )
                               )


BEFORE: GIBBONS, COOK, CIRCUIT JUDGES; AND PHILLIPS, DISTRICT JUDGE[*]


        **PHILLIPS, DISTRICT JUDGE**. Defendants-Appellants, Jack Strassweg and Rich

Krohn were charged with hunting doves, as migratory birds, over a baited area in violation of the

Migratory Bird Treaty Act ("MBTA"). Appellant Clifford Romain was charged with aiding and

abetting the hunters in taking migratory game birds over a baited area in violation of the MBTA.

Each defendant waived his right to trial by a district judge, and consented to trial, sentencing and

judgment by a magistrate judge. The magistrate judge found each defendant guilty, fined each five-

---

[*]Honorable Thomas W. Phillips, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

No.04-6054
*USA v. Strassweg, et al.*

hundred dollars ($500.00), and denied their motions for acquittal. Appellants now appeal the denial

of their motions for acquittal. For the reasons that follow, we affirm the district court and adopt its

thorough, well supported opinion.

The facts of this case are set forth in considerable detail in the published district court

opinion, <u>United States v. Strassweg</u>, 337 F. Supp. 2d 956, 957-963 (W.D. Ky. 2004), and need not

be repeated here. Since the facts of this case were not in dispute at trial, the only questions before

the district court with respect to appellants Strassweg and Krohn were whether the United States

proved that the appellants took the doves over or on a baited area (16 U.S.C. §704(b)(1); 50 C.F.R.

§§20.11(j), (k); 20.21(i)(1)(i), (2)), and whether the appellants knew or reasonably should have

known that the area was baited (16 U.S.C. §704(b)(1); 50 C.F.R. §§20.21(i)(1)(i), (2)). The district

court's inquiry as to appellant Romain was whether the United States proved both the underlying

crime and that Romain intended to help and did help Strassweg and Krohn commit the crime.

The crux of the issue on appeal is whether the regulations promulgated pursuant to

the MBTA permit hunting over or on a baited area where the area becomes baited by an accidental

seed spill while an individual is engaged in a normal agricultural operation or a normal soil

stabilization practice. As stated by the district court, "what happens if an accidental seed spill occurs

while an individual is engaged in a normal agricultural operation or a normal soil stabilization

practice?" <u>Strassweg</u>, 337 F. Supp.2d at 966. Appellants asserted at trial and now on appeal that 50

C.F.R. §§20.21(i)(1)(i) and (2) allowed them to hunt over the field because at the time the spill occurred they had no <u>intent</u> to bait the field.

Appellants rely upon a decision of this court in <u>*United States v. Brandt*</u>, 717 F. 2d 955(6 Cir. 1983), which contains language supporting the appellants' position. In fact, this court ruled that "the crucial inquiry with respect to the exceptions in issue is the intent of the person seeding the field." 717 F. 2d at 958. However, as pointed out by the district court, the relevant regulations have been amended since the decision of this court in <u>*Brandt*</u> was issued. Prior to 1999, the relevant regulations included an exception for the distribution of seeds as the result of a *bona fide* agricultural operation or procedure. The current regulations require that all planting be done "in accordance with official recommendations." 50 C.F.R. §20.11(g). Thus, the regulations now apply an objective standard in determining whether the planting was done in "accordance with official recommendations." <u>See</u> 64 Fed. Reg. 29799, 29801.

The July 1999 amendments to the MBTA define a baited area as: "any area on which salt, grain, or other feed has been placed, exposed, deposited, distributed, or scattered, if that salt, grain, or other feed could serve as a lure or attraction for migratory game birds to, on, or over areas where hunters are attempting to take them. Any such area will remain a baited area for ten (10) days following the complete removal of all such salt, grain, or other feed." 50 C.F.R. §20.11(j). Baiting is defined by the regulations as "the direct or indirect placing, exposing, depositing,

distributing, or scattering of salt, grain, or other feed that could serve as a lure or attraction for migratory game birds to, on, or over any areas where hunters are attempting to take them." 50 C.F.R. §20.11(k). The district court found, and we agree, that neither definition mentions intent, and the language of this court in *Brandt*, that it is the intent of the person seeding the field that must be considered by the court, is no longer correct under the current regulations. Rather, as found by the district court, "it is the <u>effect</u> the spill could have on migratory game birds that must be considered in determining whether an area is baited, <u>not</u> <u>the</u> <u>intent</u> of the individual that caused the spill. . . In short, the regulations do not, as defendants [appellants] contend, create an exception that allows hunting on or over the area of the spill if the spill is accidental." *Strassweg*, 337 F. Supp. 2d at 966-967.

For these reasons, we **AFFIRM** the district court and **ADOPT** its thorough, well reasoned opinion.